## Case No. 11,839.

### RILEY v. The OBELL MITCHELL.

[N. Y. Times, May 16, 1861.]

District Court, S. D. New York. 1861.

CONSUL — PURCHASE OF VESSEL SOLD UNDER CONSULAR AUTHORITY — FRAUD — BOTTOMRY — SHIPPING.

[1. A United States consul in a foreign port, under whose authority a vessel is sold, is within the rule forbidding a trustee to acquire an interest in property put to public sale under his agency.]

[2. A sale by the master in a foreign port for necessary charges, held under the authority of the United States consul. is conclusively presumed to be fraudulent when the purchase money was secured by the consul's note, upon an agreement that the ship should be transferred to trustees for the benefit of the consul's wife.]

[3. A fraudulent sale by the master in a foreign port for necessary charges does not affect the lien arising upon a prior bottomry bond.]

[This was a libel by Theodore W. Riley against the ship Obell Mitchell, Thomas W. Napier, claimant, upon a bottomry bond.]

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

Mr. Lord, for libelant.

Beebe, Dean & Donohue, for claimant.

BETTS, District Judge. This was a libel to recover the amount of a bottomry bond for $6,859.37 executed by Francis Smith, the master of the ship, at Lima, in Peru, on the 21st of May, 1851, to Alsop & Co., of that place. The libelant sued as the assignee of Alsop & Co. The bond was payable at or before the expiration of twenty days after the arrival of the ship in the United States. She arrived at New York December 28, 1851, and the libel in this cause was filed on the 20th January, 1852. The ship left Callao, where she was when the bond was executed, on the 22d of May, 1851, in good condition; but when five days out she commenced leaking. She was kept on her course, however, till June 8th, when she bore up for Talcahuano, in Chili, and twelve days afterwards she reached that port in distress. She was consigned by the master to Zerrano & Co., merchants, of that place. William Crosby was then United States consul there, and the master made his protest before him and took the usual course to have a survey of the ship, and to determine what was her condition and what he had better do. On the 12th of August Samuel Eckel assumed the consulship on appointment in place of Mr. Crosby. On the 9th of September the ship was sold at auction by the master, under the sanction and superintendence of Eckel, to satisfy charges standing against her, in consequence of damages and expenses incurred by her after leaving Callao, which the master was unable to procure means there to satisfy. The ship and her cargo of guano were bid off at that sale by a ship-master named Tabor, who was transiently in the port. Tabor, while there, was on intimate terms with Eckel, and bid her off at the instance of Eckel, who told him that the house of Zerrano & Co. would guarantee the payment of the purchase money. The next day Tabor requested Eckel to release him from the purchase, and it was arranged that Eckel should give his own promissory note to Zerrano & Co. in satisfaction of the purchase money to be advanced by them, and that the ship and cargo should be transferred to Thomas A. Napier, of New York, the present claimant, who was the father-in-law of Eckel, in trust for his daughter, Eckel's wife. This was done, and the ship was sent to this country. On the purchase of the cargo, Tabor said he bought it for Napier; but Napier, on being examined in court, denied that he authorized the sale of the ship or her cargo to him, or knew of it at the time or ratified it afterwards. The claimant now resisted the payment of the bottomry bond, sued upon, on the ground that it had been displaced by this sale of the ship at Talcahuano, which substituted for it a junior encumbrance, entitled by the maritime law to priority of payment. He also claimed that the libelant had not shown that the necessities of the ship at Callao were such as to justify the bottomry, and had also failed to prove a proper application of the funds raised by it to the use of the ship.

HELD BY THE COURT: That the evidence of the witness to the bond, and of the master of the ship, are sufficient to dispose of these latter objections. That the acts of Eckel in sanctioning and superintending the sale of the ship were exclusively official and pertained properly to his appointment as consul. That the rule in law and equity which inhibits a trustee, made such by operation of law, as much as one acting under special appointment, from acquiring an interest himself, in property put to public sale under his agency or auspices, embraces the method of making the transfer employed in this case as much as if the sale and purchase had been made between the parties. That supposing that the consul meant and believed that the formal conveyance to Napier in trust for his wife, on payment by him of the price, would be in contemplation of law an honest subsale to Napier and not really one to the benefit of the consul himself, that would not obviate the presumption of law that the sale was to inure to his benefit, nor would it impart to it validity against the libelant's bond. The purpose with which the act was done cannot fix its legal effect. That, without analyzing the multifarious evidence offered on both sides as to the character of the proceedings resulting in the sale of the ship, and without any conclusion from the evidence that the transaction was dishonest in fact on the part of the consul or the master of the ship, the sale must be held to have been fraudulent in presumption of law and void on principles of public policy, irrespective of the particular motives and intentions which governed the parties to it.

Decree, therefore, for the libelant, for the sum of $10,000, according to the stipulation made in the cause, with interest at six per cent. from the commencement of the suit, and costs.